IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| MARSHALL DUNNIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-CV-1064 |
| ) | |
| CITY OF PEORIA, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff, a police officer for the City of Peoria ("the City"), pursues claims under Title VII, alleging that the City discriminated against him because he is African-American and retaliated against him for opposing that discrimination. The City has moved to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons below, the Court recommends that the motion be denied.

## Allegations

Plaintiff, an African-American, began working as a police officer for the City in 1981. Over time he was promoted to sergeant, and then to lieutenant. In the Fall of 2005, Plaintiff applied for one of three open

captain positions. Despite his superior qualifications, Plaintiff was passed over in favor of a Caucasian female and two Caucasian males. In April 2006, Plaintiff filed a discrimination charge against the City with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. In December 2006, a fact finding conference was held in which Plaintiff and City representatives participated.

In February 2007, Plaintiff received notice that the City was investigating him for possible disciplinary action. The next month Plaintiff was terminated.

In January 2008, the plaintiff filed a lawsuit in this district, alleging that he was denied the promotion to captain because of his race. Dunnigan v. City of Peoria, 08-1022 (C.D. Ill., Judge Mihm)(pending). In February 2009, the plaintiff filed the instant lawsuit, alleging that the City further discriminated against him because of his race by disciplining him and terminating him, while granting leniency to Caucasian employees accused of similar or more serious misconduct. (Count I). Plaintiff also alleges that the City retaliated against him for opposing the discrimination. (Count II).

## Analysis

The City attaches to its motion an arbitration award and a copy of a settlement agreement between the City and Plaintiff pursuant to that arbitration award, along with other documents. (d/e 5, attachments). The arbitrator ruled that the City did not have just cause to terminate Plaintiff and reduced his termination to a 10-day suspension. The arbitrator also ordered that Plaintiff be reinstated and made whole for lost wages and benefits. (d/e 5, Ex. C, p. 24).

The City's attachments cannot be considered without treating its motion to dismiss as a motion for summary judgment and giving the parties a chance to "present all material made pertinent . . . ." Fed. R. Civ. P. 12(b)(6). However, Plaintiff does not object to treating the motion as one for summary judgment and has submitted his own documents in response, and the City does not seek to file any additional material. In any event, the Court's recommendation is the same whether the motion is considered under Rule 12(b)(6) or Rule 56.

The City contends that the arbitration proceedings preclude Plaintiff's Title VII claims. The City refers to both "issue preclusion" and "res judicata," which are different legal doctrines. "Res judicata, or claim

preclusion, bars the relitigating of claims if 'the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction.' . . . Res judicata bars not only those issues actually decided in the prior suit, but all other issues which could have been brought." Aaron v. Mahl, 550 F.3d 659, 664 (7th Cir. 2008)(quoted cite omitted).  "Collateral estoppel, or issue preclusion, prevents a party from relitigating issues that have already been litigated and decided." Id. at 665 n. 5.[1]  Thus, res judicata "prohibits a party from relitigating issues that could have been raised in an earlier action . . . (citations omitted), in contrast to collateral estoppel, which bars the resurrection of issues that were actually litigated and decided." Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 (7th Cir. 1993)(citations omitted).  The City seems to be making a res judicata type argument:  the City argues that Plaintiff already had a "full and fair opportunity to litigate the issues [in arbitration] and should not be afforded an opportunity to rehash same here."  (d/e 5, p.3).

The terms of the collective bargaining agreement are necessary to make this determination, and neither party has submitted the agreement.

---

[1] It is also not clear if Defendant intends to make its res judicata/issue preclusion argument as to both Plaintiff's claims (retaliation and discrimination), or just as to the discrimination claim.

Without the agreement, it is not possible to determine whether Plaintiff was required to arbitrate his Title VII claims or whether he even had the option of submitting his Title VII claims to arbitration.[2]

In <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36 (1974), cited by Plaintiff, the Supreme Court held that an employee could bring a civil rights action alleging employment discrimination, even though the plaintiff had already pursued and lost his grievance in arbitration proceedings pursuant a collective bargaining agreement. The collective bargaining agreement had prohibited discrimination, and plaintiff had argued in the grievance proceedings that he had been discriminated against because of his race. Before the arbitration hearing, the plaintiff filed an EEOC charge. The arbitrator ruled that the plaintiff had been dismissed for just cause without addressing the discrimination claim. 415 U.S. at 42. The plaintiff then filed a Title VII claim in federal court, alleging racial discrimination.

The Supreme Court in <u>Gardner-Denver</u> held that the arbitrator's resolution of the plaintiff's contractual rights under the collective bargaining agreement did not preclude the plaintiff's Title VII claim. This was because

---

[2] Whether a plaintiff agreed to submit his statutory claims to arbitration is also relevant, but there is nothing in this record to suggest that Plaintiff agreed to submit his Title VII claims to arbitration.

the collective bargaining agreement did not expressly cover statutory claims and limited the arbitrator's authority to resolving contractual rights under the agreement.  415 U.S. at 53-54.  The plaintiff was free to file his Title VII claims in federal court, even though the claims were based on the same discharge that the arbitrator had upheld.  *See also* McDonald v. City of West Branch, 466 U.S. 284 (1984)(arbitrator's ruling did not preclude Section 1983 action).

Gardner-Denver stands for the proposition that "arbitration [is] not preclusive [of statutory claims if] the collective-bargaining agreement did not cover statutory claims."  4 Penn Plaza LLC v. Pyett, 129 S.Ct. 1456, 1469 (2009).  If the collective bargaining agreement does not "clearly and unmistakably" require arbitration of Plaintiff's Title VII claims, then Plaintiff's Title VII claims are not precluded here, absent some sort of agreement by Plaintiff to arbitrate those claims.  *See*  Pyett, 129 S.Ct at 1469 (distinguishing Pyett from Gardner-Denver line of cases because the plaintiffs in the Gardner-Denver line of cases had not agreed to arbitrate

their statutory claims and the collective bargaining agreement did not cover statutory claims).³

The City does not address <u>Gardner-Denver</u> and has not submitted the collective bargaining agreement. Plaintiff submits only the first few pages of that agreement. Thus, the City has not demonstrated that the arbitration proceedings require dismissal of this case, on res judicata or any other grounds.⁴ *See, e.g.,* <u>St. Aubin v. Unilever HPC NA</u>, 2009 WL 1871679 (N.D. Ill. 2009)(denying motion to dismiss FMLA claim on res judicata grounds where arbitrator had found just cause for termination

---

³The Supreme Court recently noted that:

the Gardner-Denver line of cases included broad dicta that was highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights. That skepticism, however, rested on a misconceived view of arbitration that this Court has since abandoned.

<u>4 Penn Plaza LLC v. Pyett</u>, 129 S.Ct. 1456, 1469 (2009). The Supreme Court in <u>Pyett</u> held that arbitration of an employees' age discrimination claims could be compelled because the collective bargaining agreement "clearly and unmistakably" required arbitration of those claims. 129 S.Ct. at 1474; *see also* <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991)(arbitration of age discrimination claim could be compelled where employee had agreed to arbitration).

⁴There is nothing to suggest that Plaintiff agreed to submit his Title VII claims to arbitration, or that he did submit his Title VII claims to arbitration, or that the arbitrator addressed the Title VII claims. The arbitrator's decision does state that "[t]he Union suggests that the treatment of the Grievant was the result of discrimination, either due to his race or because he has filed a complaint against the City . . . ." (d/e 5, Ex. C, pp. 14-15). However, the only issue acknowledged in the arbitrator's ruling is whether "the Grievant was terminated for just cause and if not, what shall the remedy be." (d/e 5, Ex. C, p. 1). There is no mention of the discrimination or retaliation claim in the arbitrator's findings.

because collective bargaining agreement did not "clear[ly] and unmistakabl[y]" mandate arbitration of FMLA claim)(not reported in F.Supp.).

The City next argues that Plaintiff suffered no adverse action because the arbitrator's award already made him whole by reinstating him with back pay and benefits.  Termination is an adverse employment action. O'Neal v. City of Chicago, 392 F.3d 909, 911 (7th Cir. 2004).  Plaintiff's arbitration award does not erase that adverse employment action, though it does affect the remedies available in this lawsuit.  Plaintiff cannot recover double for his back pay and benefits, but Plaintiff can seek other damages allowed by Title VII that were not covered by the arbitrator's award, such as damages for emotional distress.  See 42 U.S.C. § 1981a. The City's argument goes to the amount of damages recoverable, not to the viability of Plaintiff's Title VII claims.

Lastly, the City's assertion that Plaintiff did not file a timely charge with the EEOC is unsupported.  The Complaint alleges that the charge was timely filed with the Equal Opportunity Employment Commission through the Illinois Department of Human Rights, and that this lawsuit was filed within 90 days of receiving the right to sue notice.  (Complaint, para. 4). The attachments to Plaintiff's response confirm this, showing that the

charge was the month after Plaintiff was terminated.  (d/e 9, Baker Aff. para. 5 and attachments to affidavit).

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss be DENIED (d/e 5).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    July 15, 2009

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE