**E-FILED**
Friday, 04 March, 2011  11:54:20 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **Marshall Dunnigan,** | ) |
|         **Plaintiff,** | ) |
| v. | ) Case No. 09-01064 |
| **City of Peoria, Illinois,** | ) |
|         **Defendant.** | ) |

## ORDER

Now before the Court is Defendant City of Peoria, Illinois' ("City of Peoria") Motion for Summary Judgment [#20] and Motion to Strike [#27]. The parties appeared on this matter before the Court for an evidentiary hearing on February 11, 2011. For the reasons set forth below, the Motion for Summary Judgment [#20] is GRANTED. Additionally, the Motion to Strike [#27] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the claim asserted in the Complaint presents a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## BACKGROUND

Plaintiff Marshall Dunnigan ("Dunnigan"), an African-American man, began his employment with the Peoria Police Department ("PPD") in April of 1981. In the years that Dunnigan worked for PPD, he obtained his associates', bachelor's, and master's degrees. At the time the employment decision in this case was made in 2007, Dunnigan had also worked as a

Lieutenant and as a shift commander in the patrol division at PPD for several years.

In the fall of 2005, PPD announced that it would be making promotions to the position of Captain. Ordinarily, the Chief of Police is responsible for determining who is promoted to Captain. Chief of Police Steven Settingsgaard ("Settingsgaard") decided to institute a promotional process for the fall 2005 Captain position and created a document outlining the skills and attributes he thought important for the position. All eleven Lieutenants at PPD were notified of the promotional process, and ten chose to participate. Dunnigan was the only African-American Lieutenant at PPD in 2005. Settingsgaard, along with Ken Harding ("Harding") from Bradley University, administered the exercises. In addition, Fire Chief Roy Modglin, Human Resources Director Pat Parsons, and a Police Chief from Wisconsin assisted Settingsgaard in the oral interview.

At the conclusion of each exercise, the participants were ranked according to their performance. Dunnigan was not ranked in the top three of any of the assessment tools and finished behind the nine other candidates in the overall assessment. The three top applicants, Lieutenants Scally, Snow, and Korem, were promoted to Captain. On January 18, 2008, Dunnigan filed a complaint with this Court alleging discrimination on the basis of his race as a result of not being chosen for the Captain position. That case was dismissed by this Court on summary judgment on October 5, 2010 and is currently pending appeal.

Dunnigan filed his charge of race discrimination with the Illinois Department of Human Rights ("IDHR") in April of 2006. On March 2, 2007, Dunnigan was terminated by Settingsgaard, who was the Chief of the PPD at the time. At the time of his termination, Dunnigan was actively pursuing his claim against Settingsgaard for race discrimination as a

result of Settingsgaard's decision regarding the Captain position decision. As a reason for his decision, Settingsgaard alleged that Dunnigan committed a felony by stealing a gaming ticket while at the Par-A-Dice Casino in November of 2006. Dunnigan was purportedly caught on a security camera cashing another patron's game ticket and leaving the casino with the ticket proceeds. Dunnigan was never charged with criminal misconduct, and an arbitrator later ruled that Dunnigan's termination was without just cause for lack of sufficient evidence of criminal intent. As a result of this arbitration decision, Dunnigan was reinstated by PPD.

Dunnigan filed his Complaint in this case on February 17, 2009. After denial of Defendant's Motion to Dismiss [#12], Defendant filed this Motion for Summary Judgment [#20], and Plaintiff filed his Memorandum in Opposition [#24]. As support for his Memorandum in Opposition, Plaintiff included an affidavit by Troy Skaggs ("Skaggs"), the president of the Police Benevolent Protective Association Unit 27 ("PBPA") [Ex. B to #24]. In this affidavit, Skaggs stated that he had "personal knowledge" of the investigations of Officer Katie Baer ("Baer") and Sergeant Mike Edelmon ("Edelmon"). Dunnigan asserts the facts alleged in Skaggs' affidavit to prove that these two officers are similarly situated to Dunnigan and were treated more favorably by PPD.

Defendants later filed a Motion to Strike Skaggs' affidavit [#27] pursuant to Federal Rule of Civil Procedure 56(e), arguing that Skaggs did not have personal knowledge of the investigations. Defendants attached a further affidavit signed by Skaggs in which he stated that he had no personal knowledge of the investigations of Officer Baer and Sergeant Edelmon and that his information was "provided to [him] by others." [Ex. A to #27]. Skaggs further stated that he "did not read the [previous affidavit] as [he] should have." *Id.* The Court conducted an

evidentiary hearing on this case on February 11, 2011. At the February 11, 2011, evidentiary hearing, Officer Skaggs confirmed that he had limited personal knowledge of the investigation into Officer Baer and Sergeant Edelmon. The Motion for Summary Judgment and the Motion to Strike are fully briefed, and this Order follows.

**DISCUSSION**

As there are two pending motions in this case, the Court will review each motion and issue its findings collectively in this Order.

**I.    Motion to Strike**

The Court is authorized to strike any "redundant, immaterial, impertinent, or scandalous matter" on a motion of either party pursuant to Federal Rule of Civil Procedure 12(f)(2). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify." Fed. R. Civ. P. 56(e)(1). Personal knowledge may include "reasonable inferences," but these reasonable inferences "must be grounded in observation or other first-hand personal experience." *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998). An affiant who holds a managerial position within a group "will often become aware of the finances, organization, and employees" of the group. *Boim v. Quranic Literacy Institute*, 340 F.Supp.2d 885, 925 (N.D. Ill. 2004). This awareness does not, however, extend to specific facts or circumstances. *Id.* In the *Boim* case, the Northern District of Illinois found that the affiant, a corporation president, did have personal knowledge sufficient to support an affidavit on the issues of general finances, employees, and company relations. The Northern District further held that this corporation president did not have sufficient personal knowledge to testify to specific figures or circumstances that he did not

4

directly oversee.

In this case, Skaggs, as President of the PBPA, had personal knowledge as to the general workings of the PBPA and its role in disciplining officers. Furthermore, he potentially had personal knowledge as to the resolution of the matter involving Sergeant Edelmon; however, Skaggs stated in his second affidavit that he did not have knowledge as to the details of the investigation [Ex. A to # 27]. At the February 11, 2011, evidentiary hearing, Skaggs stated that he was friends with Sergeant Edelmon. Skaggs also stated that, at one point, he asked Edelmon about the investigation, but Skaggs testified that he was not personally involved in the investigation.

Skaggs also had general knowledge of Officer Baer being issued a three day suspension. Skaggs did not, however have personal knowledge as to the specific incidents surrounding the investigation of either of these two officers. First, Skaggs stated that he had "no personal knowledge of the matters alleged in [Paragraph 7 of the Declaration dated December 3, 2010]" and that his information regarding the investigation of Officer Baer was "based on information provided by others." *Id.* Second, while Skaggs may have had general knowledge regarding these events given his position within PBPA, he did not have personal knowledge as to the particulars of the investigations of these two officers without having been involved in their investigations. At the February 11, 2011, evidentiary hearing, Skaggs testified that he had limited involvement in Baer's investigation: (1) Skaggs talked with another officer about a disagreement that the officer had with Baer; and (2) talked with personal affairs regarding Baer's actions. However, Skaggs also testified that he was not involved in Baer's disciplinary action or any of the particular occurrences pertaining to her investigation. As such, paragraphs 7-9 and

5

11-14 of Troy Skaggs' Affidavit [Ex. B to #24] will be stricken.

## II. Motion for Summary Judgment

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine material issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is

a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## Plaintiff's Retaliatory Race Discrimination Claim

In order to prevail on a retaliatory race discrimination claim under Title VII of the Civil Rights Act of 1964, a plaintiff may use the direct or indirect method of proving discrimination. *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). Under the direct method, racial discrimination is proven by putting forth evidence of "discriminatory motivation." *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005). Under the indirect method, the plaintiff must establish a prima facie case for discrimination and then the burden of proof is shifted to the defendant. The Court will first consider whether the record gives rise to a prima facie case under the direct method. If no genuine issue of material fact exists, the Court will then consider whether the record establishes a prima facie case under the indirect method.

### **Direct Method**

In order to prove racial discrimination under the direct method, the plaintiff must establish that the defendant's actions were motivated by a discriminatory state of mind. *Rudin*, 420 F.3d at 720. To do so, the plaintiff must rely on direct or circumstantial evidence. *Id.* Specifically, the plaintiff must present evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Dickerson v. Walgreen Co.*, 345 Fed.Appx. 178, 179 (7th Cir. 2009) (quoting *Phelan v. Cook County*, 463 F.3d 773, 779-80 (7th Cir. 2006)).

Direct evidence "is evidence which, if believed by the trier of fact, will prove the

particular fact in question without reliance upon inference or presumption." *Rudin*, 420 F.3d at 720. This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). It is undisputed that Dunnigan is not able to present evidence of a "smoking gun" or other direct admission of racial animus.

Circumstantial evidence under the direct method allows the trier of fact to infer intentional discrimination by the decisionmaker through pieces of evidence that compose a "convincing mosaic of discrimination against the plaintiff." *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) (*Mataya v. Kingston*, 371 F.3d 353, 358 (7th Cir. 2006)). A plaintiff may prove unlawful retaliation under the direct method by providing circumstantial evidence that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between these two events. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

The filing of a discrimination suit is sufficient to satisfy the first prong of the direct method. *Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 533 (7th Cir. 2003). As Dunnigan was terminated in March 2007 after he filed his discrimination suit against the Defendant in April 2006, Dunnigan clearly satisfies this first element of the direct method. Dunnigan also meets the second prong of the direct method as his termination from PPD constituted an adverse employment action as a matter of law.

Thus, the issue remaining is whether there was a causal connection between Dunnigan's filing of his racial discrimination claim against the City of Peoria and the Defendant's decision to terminate Dunnigan's employment. Dunnigan proffers several different pieces of evidence to

attempt to satisfy a finding of a causal connection between these two events: (1) Chief Settingsgaard and Captain Scally changed their behavior towards Dunnigan; (2) the investigation into the Par-A-Dice incident deviated from the normal practice of the PPD; and (3) Dunnigan was treated less favorably than similarly situated employees both before and after his termination.

Dunnigan first claims that his relationship with Chief Settingsgaard and Captain Scally changed after Dunnigan filed his discrimination claim. Specifically, Dunnigan contends that Settingsgaard avoided Dunnigan and did not make eye contact with him. Settingsgaard also became agitated with Dunnigan at a meeting with the Illinois Department of Human Resources ("IDHR"). Dunnigan also claims that Scally became distant and ceased to make small talk. Scally later requested that Dunnigan keep his computer turned on while he was in his squad car. Scally also allegedly ceased giving Dunnigan performance reviews.

Generally, plaintiffs are required to offer some evidence to support their assertions of circumstantial instances of discriminatory conduct that is not based on speculation or conjecture. *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008); *Elekhor v. AON Service Corp.*, 2006 WL 2349982 (N.D. Ill. 2006) ("self-serving interpretations of [a defendant's] behavior" do not provide sufficient circumstantial evidence of discriminatory action). Dunnigan's assertions that his relationship with Settingsgaard and Scally changed is based solely on Dunnigan's speculation as to the level and quality of their conversations and eye contact. Furthermore, Scally's request that Dunnigan keep his squad car computer running is in compliance with General Order 500.05 and, therefore, cannot promote any reasonable inference of discrimination [Ex. A, #28].

9

Finally, Dunnigan claims that Scally's failure to give him a performance review indicates circumstantial evidence of discriminatory conduct. Dunnigan was allegedly the only Lieutenant of the patrol division who did not receive a written performance evaluation for the 2006 year. Dunnigan does not, however, point to any evidence beyond his self-serving assertion of this fact. Finally, there is no evidence before the Court that Scally was aware of Dunnigan's lawsuit before February of 2007. [Scally Affidavit, #28]. Thus, Scally's actions before this time cannot be characterized as retaliatory. *Tomanovich*, 457 F.3d at 669-69 ("[I]f an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them.") (internal quotation omitted).

Dunnigan next contends that the investigation into the Par-A-Dice casino incident deviated from the normal practice of the police department. Additionally, Dunnigan alleges that Settingsgaard appeared to have "significant" interest in Dunnigan's investigation. Finally, Dunnigan asserts that there was too little evidence against him to warrant terminating his employment.

The Office of Professional Standards has "primary responsibility" for internal investigations of the Peoria Police Department. *See* Peoria Police Department General Order 200.02. Plaintiff alleges that the participation of additional people such as Chief Settingsgaard, Captain Scally, and Kimberly King of the Corporation Counsel's Office points to circumstantial evidence of discrimination as this deviated from the normal practice of investigations. Nothing in General Order 200.02 indicates that these parties should not participate or that they do not participate in investigations. Plaintiff proffers the testimony of Professional Standards Officer Conrad Hlavacek ("Hlavacek") as evidence of the fact that Captains are "not normally" involved

10

in investigations. [p. 6, Ex. E, #24]. In his testimony, Hlavacek goes on to say that, while not "normal," Captains have been involved in his investigations "several times." *Id.* Hlavacek also explains that the Corporations Counsel's Office got involved due to the fact that an attorney from the Illinois State Police informed Hlavacek that they were not willing to release the report of the Par-A-Dice incident. [p. 4, Ex. E., #24]. In order to obtain this documentation, Hlavacek requested the assistance of counsel. Plaintiff does not dispute that the Par-A-Dice report was not willingly released. Plaintiff also does not dispute that Hlavecek requested the assistance of the Corporations Counsel's Office in order to get access to this report.

From the record, Plaintiff appears to contend that Chief Settingsgaard's "significant" involvement included assigning the investigation, seeking advice from the Corporation Counsel's Office, and meeting with Hlavacek. Chief Settingsgaard's involvement began when the Par-A-Dice incident was reported to him by another officer. As the incident was reported to him, Settingsgaard became involved in order to appoint someone to begin the investigation into Dunnigan's activities. Furthermore, when difficulties arose regarding obtaining reports from the Illinois State Police, Settingsgaard sought advice of counsel. Drawing all inferences in favor of Plaintiff in regards to this conduct, no reasonable jury could find that this conduct is retaliatory in nature. Furthermore, Plaintiff's arguments that Hlavacek's attitude and demeanor towards Dunnigan became less cordial after meeting with Settingsgaard are, again, nothing more than self-serving, speculative statements of a person's behavior and do not support a reasonable inference of retaliation. *Argyropoulos*, 539 F.3d at 734; *Elekhor*, 2006 WL 2349982.

Dunnigan also asserts that there was too little evidence against him to warrant termination, and his previous record with the PPD should not have warranted termination. While

11

Dunnigan had not been previously disciplined beyond an unrelated two-day suspension, at the time of his termination, he had violated a PPD General Order and was under investigation for the commission of a felony. From the record before the Court, there is no dispute that Dunnigan failed to report the pending Par-A-Dice investigation. This failure was a violation of General Order 6(a)(1).

Furthermore, there was an investigation into Dunnigan's alleged commission of a felony for taking and cashing the gaming ticket of another casino patron. It is undisputed that Dunnigan took this ticket and later cashed the ticket with Par-A-Dice. It is also undisputed that Dunnigan was not the owner of the ticket. Finally, Plaintiff does not dispute that the internal investigation against Dunnigan relied on logical sources: (1) a casino surveillance tape of Dunnigan's activities at the Par-A-Dice, and (2) the state investigation report. The video shows Dunnigan taking the gaming ticket from a slot machine, cashing that ticket, and being investigated by Par-A-Dice officials. The investigation report, as re-typed by Captain Scally, details the events at the Par-A-Dice. The report also states that "Dunnigan attempted to conceal what he was doing" when he took the gambling ticket. [#33, p.42]. The report indicates that the Par-A-Dice Director issued an eviction notice to Dunnigan after the incident, preventing Dunnigan from entering the premises in the future. *Id.* at 43. The report concludes that the Par-A-Dice incident will be documented as a theft. *Id.*

The only issue between the parties on this subject is whether Dunnigan acted with the requisite intent to be guilty of a felony. Contrary to Plaintiff's contentions, the Court need not determine whether Dunnigan in fact committed a felony or had the requisite intent to commit a felony. Instead, the Court's determination hinges on whether a reasonable jury could find that

12

the way in which the investigation was conducted is circumstantial evidence of retaliation. As Dunnigan does not contest that he took and cashed another patron's gaming ticket, and that his actions were caught on film, a reasonable jury could only conclude that the sufficiency of evidence in the case is not circumstantial evidence of retaliation.

Next, Dunnigan contends that similarly situated employees outside of his protected class were treated more favorably than he was both before and after termination. A similarly situated employee is directly comparable to the plaintiff with respect to performance, qualifications, and conduct. *Peirick v. Indiana University – Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 687-88 (7th Cir. 2007). Under this test, there must be a showing that the similarly situated employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Dunnigan first claims that he was treated differently than similarly situated employees outside of his protected class because he was not given the opportunity to retire before he was terminated. Plaintiff points to the case of Troy Parker, who was charged with a felony, faced termination proceedings, and was allowed to resign. According to Settingsgaard, and undisputed by Plaintiff, Parker's resignation resulted from an agreement with the State's Attorney's office in exchange for dropping all charges. In this case, Dunnigan was not being investigated by the State's Attorney's office. While he was presented with a negotiated Settlement Agreement that would have permitted him to retire several months after the investigation in April of 2007, he declined to sign the Agreement as it required that he drop his pending discrimination claim.

13

There is no information before this Court that indicates that Dunnigan was prevented from retiring other than his choice not to sign this Settlement Agreement. Plaintiff states that he was not "allowed to retire," but Plaintiff does not provide any evidence to support this speculative statement. Thus, Plaintiff has not presented a genuine issue of material fact in this respect.

Dunnigan also lists several different police officers who underwent internal investigations and received less strenuous disciplinary action. While Plaintiff asserts that these officers are similarly situated to him, the record reveals that they are not. Plaintiff does list two officers who were disciplined and supervised by Settingsgaard, but the disciplinary incidents involving these officers were the subject of a previous Motion to Strike and are not appropriately before this Court. Even if they were, both officers were not accused of felonies nor were they the same rank as Dunnigan at the time of their alleged disciplinary infractions. None of the officers listed by Plaintiff, and properly before the Court, were disciplined by Chief Settingsgaard. As such, these listed officers neither dealt with the same supervisor nor were disciplined by the same decisionmaker as Dunnigan. *Dickerson v. Walgreen Co.*, 345 Fed.Appx. 178 at *2 (7th Cir. 2009); *Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008). Furthermore, all but three of the officers listed by Plaintiff were neither accused of nor investigated for a felony as Dunnigan was.

Of the three officers accused or investigated for felony offenses, none of these officers are "similarly situated" to Dunnigan. Officer Phillip Benne ("Benne") was involved in a drunk driving accident and then left the scene of the accident. While there is some dispute as to whether this conduct amounted to a felony, Benne also differs from Dunnigan in that a possible disciplinary action in his case was to demote him from Captain to Lieutenant. Defendant claims,

14

and Plaintiff does not offer any counter argument, to the fact that this disciplinary action was not available in Dunnigan's case. Officer Elmer Johnson ("Johnson") allegedly failed to report a crime, which constituted official misconduct. Officer Johnson received a twenty day suspension. Officer Clayton Gasper ("Gasper") received a suspension for criminal sexual assault. In addition to being disciplined by a different decisionmaker and being under a different supervisor, Johnson, Gasper, and Benne were of different ranks than Dunnigan. As such, these officers too are not similarly situated to Dunnigan. As Plaintiff cannot provide sufficient circumstantial evidence to meet to standard under the direct method, he cannot establish a question of material fact sufficient to overcome summary judgment under this method.

**Indirect Method**

Retaliatory racial discrimination may also be proven through the indirect method. Under the indirect method, a plaintiff must establish a prima facie case showing: 1) he engaged in statutorily protected activity; 2) his job performance met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated individuals not of the plaintiff's class were treated more favorably than the plaintiff. *Tomanovich*, 457 F.3d at 663. Under this method, no causal connection between the adverse employment action and the statutorily protected activity need be established. *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004).

If the plaintiff can establish his prima facie case under the indirect method, the burden shifts to the defendant to offer a permissible, nondiscriminatory reason for the adverse employment action. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the defendant satisfies its burden, the plaintiff must then show the defendant's

15

purported reasons are a pretext for discrimination. *Id.* If the plaintiff is unable to establish his prima facie case, the defendant is entitled to summary judgment. *Moser*, 406 F.3d at 904.

It is undisputed that Dunnigan meets prongs (1) and (3) of his prima facie case: Dunnigan engaged in a statutorily protected activity by filing his racial discrimination claim, and, in being terminated, he suffered an adverse employment action. The parties do, however, dispute whether his job performance met Peoria's legitimate expectations of its officers and whether similarly situated employees not of Dunnigan's protected class were treated more favorably than he was.

In order to determine whether an employee is meeting an employer's legitimate expectations, courts examine whether the employee was performing "adequately at the time of the adverse employment action." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993). This determination is made at the "crucial time when the employment action is taken." *Fortier v. Ameritech Mobile Communs.*, 161 F.3d 1106, 1112 (7th Cir. 1998).

While Dunnigan had typically received good or average performance reviews and had only been disciplined once previously, there is sufficient evidence to establish that he was not meeting the legitimate expectations of PPD when he was terminated. Dunnigan did not meet the legitimate expectations of his employer for two reasons: (1) he did not report the fact that he was under investigation for a felony; and (2) there was evidence that Dunnigan committed a felony. There is no dispute that Dunnigan failed to report the pending Par-A-Dice investigation, which was a violation of General Order 6(a)(1). As a violation of the Department rules, Dunnigan was not meeting the legitimate expectations of his employer at the time he was terminated. *See Contreras v. Suncase Corp.*, 237 F.3d 756, 760 (7 Cir. 2001) (holding that, "by putting [an

employer's] requirements in [the organization's] Rules, there can be no claim that these were not legitimate expectations of the [organization].").

Dunnigan was also not meeting the legitimate expectations of his employer when he allegedly committed a felony. Plaintiff asserts that there was not enough information to warrant terminating him as a result of the Par-A-Dice incident where he was accused of stealing a slot machine ticket. Plaintiff cites to the decision of Arbitrator VanHof as evidence of the fact that Defendant did not have sufficient information to terminate his employment. In general, the decision of an arbitrator can be given as much weight as the Court deems appropriate. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974). Furthermore, the arbitrator in Dunnigan's proceeding required that Defendant meet the high "clear and convincing" standard for establishing that Dunnigan committed a felony. [Ex. 4, #20]. That standard is significantly higher than the "reasonable" employer standard applicable here to determine whether a plaintiff has met the employer's legitimate expectations. As such, the videotape and the state investigator's determinations about Dunnigan's actions in that tape would support a reasonable employer's belief that Dunnigan committed a felony. Considering Dunnigan's admitted failure to report the investigation and Settingsgaard's determination, supported by Hlavacek, Scally, Settingsgaard, and King, that Dunnigan committed a felony, no reasonable jury could find that Dunnigan had met his employer's legitimate expectations.

Next, Dunnigan contends that similarly situated employees outside of his protected class were treated more favorably than he was. As stated previously in this Order, Plaintiff must make a showing that the similarly situated employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or

17

mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Dunnigan lists several police officers who underwent internal investigations and were not terminated. While Plaintiff asserts that these officers are similarly situated to him, they are not. None of the officers listed by Plaintiff were disciplined by Chief Settingsgaard. As such, these listed officers did not deal with the same supervisor nor were disciplined by the same decisionmaker as Dunnigan, which is a requirement to be "similarly situated." *Dickerson v. Walgreen Co.*, 345 Fed.Appx. 178 at *2 (7th Cir. 2009); *Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008). Furthermore, only three of the officers listed by Plaintiff were accused or investigated for committing a felony. Of these three officers, one was demoted, which was not a disciplinary action available in Dunnigan's case. The other two officers held a different rank than Dunnigan. As such, these officers are not similarly situated to Dunnigan.

Finally, the Court considers Peoria's articulated reasons for their termination decision and whether these reasons were mere pretext for discrimination. "Pretext is more than a mistake on the part of the employer; it is a phoney excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). The plaintiff may prove pretext by establishing that (1) the employer's reason had no basis in fact; (2) that the explanation was not the real reason for its action; or (3) that the reason stated was insufficient to warrant the adverse job action. *Atanus*, 520 F.3d at 674. In this process, the Court does not determine whether the employment decision was "correct business judgment" nor does the Court act as a "super-personnel department" by reviewing the decisions of the employer. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d at 696; *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001).

Here, Plaintiff asserts that Settingsgaard's termination decision was pretextual on the grounds that there was insufficient evidence to believe that Dunnigan committed a felony and that, in comparing disciplinary actions of previous officers, Settingsgaard over-penalized Dunnigan for his allegedly improper conduct. Contrary to Plaintiff's assertions, Settingsgaard has proffered a legitimate reason for terminating Dunnigan: (1) he was being investigated for the alleged commission of a felony; (2) Settingsgaard reasonably believed that Dunnigan was guilty of the offense due to videotape footage of the incident and the state investigative report; (3) Dunnigan failed to report the investigation, which was a clear violation of Department General Order C(8); and (4) previously disciplined officers were not similarly situated to Dunnigan or his alleged conduct. Settingsgaard's opinion to terminate Dunnigan was also supported by Senior Staff Attorney Kimberly King, who is an African-American, Professional Standards Officer Hlavacek, and Captain Scally. A reasonable jury could only conclude that Defendant has demonstrated the lack of pretext for retaliation.

Ultimately, employers are entitled to make "reasoned business judgment about whether to continue to employ" their workers. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1009 (7 Cir. 2000) (citing *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134,1142 (7th Cir. 1997)). Even taking the evidence in the light most favorable to the non-moving party, a reasonable jury would find that Settingsgaard made a reasonable employment decision regarding Dunnigan's termination. Based on the record and given Dunnigan's activity at the Par-A-Dice as evidenced by a casino surveillance tape, there is no genuine issue of material fact to indicate that Dunnigan's termination was retaliatory or pretextual for discriminatory retaliation.

Therefore, Dunnigan does not have an actionable discrimination claim under either the direct or the indirect method.

## **CONCLUSION**

Dunnigan is unable to present evidence sufficient to establish retaliation under either the indirect or the direct method as applied by the courts in analyzing Title VII of the Civil Rights Act of 1964. He is also unable to present evidence sufficient to create a material issue as to whether Peoria's termination decision was retaliatory or pretextual for retaliation. Therefore, for the reasons set forth above, Defendant City of Peoria, Illinois' Motion for Summary Judgment [#20] is GRANTED. Defendant's Motion to Strike paragraphs 7-9 and 11-14 of Troy Skaggs' Affidavit [Ex. B to #24] is also GRANTED. This case is now terminated.

Entered this  4th  day of March, 2011.

                                                /s Michael M. Mihm

                                                Michael M. Mihm
                                                United States District Judge